Good morning, Your Honors. May it please the Court, my name is Gary Williams. I represent the plaintiff, Appellant Deborah McAlpine. You're from Quillacene, do I pronounce that correctly? Yes, Your Honor. And where is that? It is on the other side of Puget Sound, near Hood Canal, in the woods. Okay. Go ahead. I practice by myself. No one else would go there with me, I'm sure. Washington law is probably more consumer oriented than almost in any state in the Union. And Washington insurance law is based on a principle. And the principle is that the purpose of insurance is to insure. And that we should construe policy language which grants coverage in a liberal fashion. We should construe policy language that takes away coverage or limits coverage in a very strict fashion. And those rules are nothing special, except in the state of Washington, they are regularly used and upheld. They're not just words. This case, particularly three rulings in this case that we are appealing, turns that principle on its head. Because what happened here was the trial court made rulings which favored State Farm in the face of no authority, no factual background. Take the mend the hold argument, for example. Mend the hold is an old principle that says in a contract dispute, a party will not be allowed to change his defense if doing so would cause any prejudice to the other party. And it mostly finds itself used in insurance law cases under situations like this. What's the prejudice? If they had told you in the denial letter, we're going to rely on the fraud and misrepresentation and also the non-cooperation agreement or clause in the contract. Then we could have defended against the non-cooperation. Defended or done something different. Excuse me? Defended or done something different prior to trial? Defended. Yes, defended. What would you have done differently? Well, we would have started in the deposition of the handling adjuster where I asked her straight out, why did you deny this claim? And she said, for misrepresentation and not for lack of cooperation. Very clear. Then I could ask more questions about that. And I'm not allowed to do any of that because the cooperation defense really doesn't get inserted in the case until jury instructions. Right, and I'm trying to explore that a bit in terms of the prejudice, because although the cooperation agreement wasn't an affirmative defense, and I'll give you that they did not deny based on non-cooperation, and State Farm also had indicated that it wasn't asserting a non-cooperation affirmative defense, but they did indicate to the plaintiff that it would be a part of the case. So I assume that in the preparation of the case in general, that there would be an ability to prepare for allegations of non-cooperation. So where is the prejudice? The prejudice is in State Farm's consistent statements that it would not use a cooperation defense at trial, and our lack of ability to prepare for it. You know, I had an expert witness, Steve Streslek, who was on the stand for a day and a half, and he would have been an excellent witness to talk about cooperation in this case and tell the jury what cooperation is in an insurance policy and what it isn't. At some point during the trial, it became apparent, you tried the case, I take it? Yes. At some point during the trial, it became apparent to you that State Farm was going to assert lack of cooperation. Is that correct? Yes, yes. And at that point, did you ask to suspend the trial and conduct further discovery? No, it happened during jury instructions, Your Honor. During the formulation of jury instructions, instruction number 16 was presented by State Farm. 16 said that lack of cooperation is an affirmative defense to coverage and that State Farm had the burden to prove it. Had there been evidence put forth in the trial as to a lack of cooperation? Mixed in with misrepresentation because what we had here was a long period of time in which State Farm asked for documents, financial information, examinations under oath, statements from various people who were connected in one way or another with this restaurant. And State Farm, the issues of non-cooperation and potential misrepresentation are very close to each other. Did you point out during the trial that State Farm had said they wouldn't rely upon that particular defense? We did in arguments over the jury instructions. No, I meant to the jury. No, I don't think so. You didn't put in the letter where they said they wouldn't rely upon a lack of cooperation? No, I don't think so, Your Honor. Anything to prevent you from doing that? Yeah, I think it would fall in that category. There are lots of places where you can say, yeah, the Ninth Circuit Court of Appeals is not one of them. I'm sorry, Your Honor. Yes. That would fall in that category of evidence that has to do with the trial itself. And most trial courts would not let us use that in a bad faith or a coverage case because it really wouldn't relate directly to is the loss covered and did State Farm commit bad faith? Your position is that it popped up with this jury instruction, you objected to the jury instruction, you argued to the court in settling instructions, I take it, that there shouldn't be an instruction based on lack of cooperation because of what State Farm had told you. Is that right? Yes, Your Honor. And the court said no and allowed it to go forward? And there we went. Okay. I got you. One of the things about the men-behold doctrine that's illustrated in this case, I think, is that the purpose of the men-behold doctrine, one of the purposes,  and parties should not be allowed, to the prejudice of other parties, to change defenses in the way State Farm did in this case. The other two errors are... When you settled the instructions and the court overruled your objection to including the non-cooperation, did you work with counsel to revise the verdict form so that it's clear upon which basis the jury is going to rule against your client? We worked, the four of us, four lawyers, two on each side, and the judge and his two clerks worked on the verdict form for the last two or three days of the trial, Your Honor. It's just the way it's laid out. It's difficult to tell why it was a decision against your client. Well, it's hard to tell whether the jury ruled this way because of non-cooperation or because of the lack of proof of damages. And I just wondered why counsel didn't make it a little bit clearer in terms of the affirmative defenses. Well, you'll notice the way misrepresentation sticks out by itself on the verdict form as question number one, and lack of cooperation shows up more toward the end of the instructions and in a burden of proof instruction. And we did not think lack of cooperation should be in the case as an affirmative defense at all. And remember, in a first-party coverage case, the insured's burden is pretty straightforward. The insured has to show that the loss falls within the general scope of the policy, that the building that's described in the policy was damaged by a fire, a covered peril. Then it's up to State Farm to prove an affirmative defense if it wants to try to escape coverage. The other two errors are very, very similar. First, the trial court erroneously dismissed the loss of income claim, erroneously dismissed the building claim. By the time we got to the jury, two-thirds of our case was gone. Both of those rulings on the building claim and the loss of income claim are very similar. In the first place, there is no support in the insurance policy for either one of those rulings, absolutely none. The first one, the business income policy, the court issued, the court ruled, that if Ms. McAlpine did not show an intent to rebuild her building, that she would not have a claim for loss of business income. There is nothing in the policy that suggests that. There is no case that I could find, or apparently State Farm could find anywhere, that even addresses it because the issue is so far out there. The building claim. The trial court dismissed the building claim on the basis that the mortgagee, Harborstone Mortgage, had made a claim along with Mrs. McAlpine, and the mortgagee had been paid $200,000 out of a $325,000 loss. The court said that the mortgagee had become the agent of the policyholder and had taken over the claim somehow. Harborstone's interest is superior to the plaintiff's interest, right? Yes. And their interest is up to the policy limit. Yes. They negotiated out. State Farm got a full waiver. Yes, from Harborstone. So wouldn't it make sense then that if there is liability on somebody's part for this settlement and release of State Farm, it would be on Harborstone's part? I don't know, Your Honor. I was shocked when the trial court said that because the policy is so clear that there are two insuring agreements, one toward the insured, one toward the mortgageholder. The mortgage endorsement is set up so that if the insured violates the policy, the mortgagee still gets to collect on its claim. So my client owed Harborstone more than the amount of the claim. If State Farm had paid $325,000 instead of $200,000, my client would have paid off another hundred and a quarter of her claim. So both parties had an interest in that. And the mortgage clause says when that occurs, State Farm will pay as interests appear. And that's all. Well, Harborstone has the interest up to the policy limit. So instead of collecting on the policy limit and take the risk of litigation, they said we'll settle for something less than what we're entitled to. And in exchange, obviously, State Farm sought and received a release for that. We both had an interest in that. That's the point, Your Honor. If the mortgage company had settled for $325,000, my client would be ahead $125,000 on her debt, which she was not. The COSIN, and I cite the article in my brief, talks about the mortgage clause and how it creates a split of coverage between two parties, both who have an interest. And that's what happened in this case. There is no authority anywhere for what the court did in this case. I see my time is just about up. I'll save my last few seconds for rebuttal. Thank you, Counsel. May it please the Court. My name is Dan Sirey, and I represent State Farm, the appellee. Starting with the mend the hold issue, I think that's a bit of a misnomer because, well, mend the hold is an old doctrine. It's not a Washington doctrine. Oh, just a minute. We need to restart the clock for you. It's starting again. Go ahead, Counsel. All right. But mend the hold, again, it's not just an old doctrine. It's not a Washington doctrine. As we pointed out in our brief, there is Washington case law dealing with the situation where a defense is not raised in a letter or correspondence prior to litigation and then a different or additional defense is raised. And as the Court has pointed out in its questions, there have been no showing of prejudice. And one of the main reasons for that is that the same evidence of cooperation would be relevant for at least two other reasons, and Counsel would have every incentive to prepare to address that issue in the case. What are those issues? What are those two other issues that would, in your view, overlap cooperation? Well, the first issue is the issue of bad faith. Now, whenever there's a claim of bad faith, it's a dispute between the policyholder and the insurance company about why a performance, you know, what wasn't given or whether it should have been given, and the insurance company's reasons for taking as long as it did to respond to a claim. And, of course, the insurance company's defenses, in this case, were in part that we needed more information to assess the claim, and Ms. McAlpine would not give it to us for whatever reason. And that was certainly something that was known and would have been addressed at trial with or without a cooperation instruction. And, of course, the second goes to, you know, a lot of the misrepresentation issues could also be just as easily analyzed as a cooperation issue. So those are the two reasons why the same material would have had to have been discussed and analyzed regardless. And the jury found in McAlpine's favor on the misrepresentation question, didn't they? That is correct. The verdict had basically two binary yes or no questions answered on it. And one of them was, did McAlpine misrepresent, and the answer was clearly no. McAlpine prevailed. Misrepresent or conceal, right? Right. Intentionally conceal material facts. Now, whether that The problem in this case is that you specifically waived a non-cooperation affirmative defense. You represented to the plaintiff that you would not be pursuing that as an affirmative defense at a couple of different stages of litigation, and then asked for a jury instruction that included that as an affirmative defense. Now, it may be that counsel can bring in additional witnesses and evidence to rebut that affirmative defense squarely. It may be that the evidence wouldn't be too different. But that's a bit unfair, isn't it? That you tell the other party that you are not going to pursue that as an affirmative defense, and then you ask for the instruction on that. And that creates the difficulty in the record, especially given the verdict form, because the verdict form found that she did not intentionally misrepresent or conceal any material fact. So how do we assess how asserting the non-cooperation affirmative defense play into the jury instruction? How do we make that assessment? That's a multi-part question, and the first part is whether there's an expressed waiver. And there are a couple of contexts where Mr. Williams raised that. And one is the deposition of the claims handler occurring during the litigation. What were the reasons you denied coverage? And it's right there in the letter. Yeah, we denied coverage because of the misrepresentation clause, and not for any other reason because no other reason is stated in the letter. That's not a waiver of a litigation defense that might arise. Well, I thought there were three instances, and if I'm wrong, please correct me. But in the denial of coverage letter, there was not a ground of non-cooperation as a basis for denial. In the adjuster's deposition testimony, she indicated that it was not denied based on non-cooperation. And I thought in court that you'd represent it to the district court, that you would not be pursuing an affirmative defense of non-cooperation. I don't know if during the trial we made that representation. I think what that might be referencing is a response to amend the hold motion that was filed like a day before the trial. I think it was like the last business day before the trial. They filed some kind of amend the hold motion, certainly past the deadline for motions in limine. And I think our brief may have said that we're relying on cooperation for different reasons than for denying coverage. And it may have been inartful or even badly stated. But the issue was certainly addressed during the course of the trial on several occasions about what the appropriate instruction should be and whether the evidence supported non-cooperation as an affirmative defense. The only difference is whether it would be given preclusive effect or whether it would just be part of State Farm's story of the case as a general defense to the bad faith claims or just have a legal effect independent of that. Now, Your Honor asked a question about the verdict form. Yes, what do we think of that? And that's something that we addressed that in our brief under the harmless error secondary argument is that how can we discern that this is the reason the jury did what it did when the only benefits claim that went to the jury, as Mr. Williams concedes, is the personal property claim. And as we pointed out, that claim barely scraped past a directed verdict because there was simply no testimony about it at all in the plaintiff's case in chief. And they were required to rely on an inventory form that their client could not explain. So the jury could well have decided that that's just not something we can analyze given that the plaintiff admits she doesn't understand the form and can only state that she agrees with it. The jury could very probably have said we can't decide from that what the cash value of this property is. So given those alternative explanations, it could have been cooperation, it could have been lack of proof, and an issue that certainly could have been addressed by suggesting a separate interrogatory, as Your Honor pointed out, to the jury is first, just as there was a specific misrepresentation interrogatory, there could have been a cooperation interrogatory to make this clearer. But no one asked for that. Now on the property coverage, again, the problem is that Harborstone's interest far exceeded the remaining limits of the policy. State Farm had an amount that it certainly agreed to pay Harborstone, $194,000, that it paid them without a release. And the question is whether Harborstone had to go to trial to collect or could give State Farm an invalid enforceable release in exchange for an amount of money and avoid the risk of trial. Now if Ms. McAlpine were able to come back, despite Harborstone settling, and say, well, I want to go after the even higher amount. I want to go all the way to the policy limits at the jury trial. Well, if that were the rule, then State Farm would have no incentive to settle with Harborstone at all. And Harborstone would be forced to bear the risk. And as we pointed out, this goes beyond the loss payee clause in the contract, in the insurance contract. Now that clause doesn't make Harborstone an insurer. It just says that loss, if any, will be paid to Harborstone where its interest appears. And it appears for coverage A, and it appears for the full amount of coverage A. And that certainly supports the position the district court took. In addition, there is a complaint that this was brought up in a motion to eliminate. Well, no, it's based in part on an earlier agreed summary judgment order establishing Harborstone's rights in the claim. And, of course, the audience for that order was State Farm, not Ms. McAlpine. It said, deal with us on the coverage A claim because the judge has ruled, and it's undisputed, that we own that claim. In addition, of course, the agreements incorporated into the order, the deed of trust, make, give Harborstone an express security interest in the, not just in some specific interest they have in the policy, but in McAlpine's interest in the policy proceeds. There's no separate to interest when it comes to executing on the security agreement. And the rules in both the uniform commercial code, which is incorporated into the deed of trust, and the common law in general support that outcome as well. That any deficiency in Harborstone's settlement is a dispute between Harborstone and McAlpine about whether Harborstone settled for too little and McAlpine can come back to Harborstone and say, I don't owe you anything more because you squandered the claim against State Farm. Did State Farm raise lack of cooperation in its answer? It did. I would point to excerpts of record 100, page 138 in particular. You'll see, and that's a section of State Farm's answer, paragraph 9.2, plaintiff's failure to comply with the terms and conditions of the policy have resulted in prejudice to State Farm's investigation and ability to complete its coverage investigation. And, you know, 9.3 raises a similar defense. Well, failure to comply with the conditions isn't really the same as non-cooperation with the claim investigation, is it? Arguably not. Certainly not as specific. Well, it wouldn't be sufficiently specific for possibly some of the conditions in the policy, but for cooperation, I think it is. My question was, does the answer assert in these words, lack of cooperation or non-cooperation? And I take it the answer is no. I understand your argument that the language used encompasses that, but those phrases, lack of cooperation, non-cooperation, are not in the answer. Right. The word, that is right. But they sure were in the jury instruction. They were in the jury instructions. And, of course, it's certainly within the court's discretion to allow, you know, allow the pleadings to conform to the evidence or to make those kind of calls. I think if it's not amend-the-hold legal-type argument, but whether it's sufficiently in the answer and whether there's prejudice resulting from allowing State Farm to raise that defense, I mean, that goes into the realm of abuse of discretion if we're talking about. Was there a pretrial statement prepared, joint pretrial statement? Do you do that in this neck of the woods? We did, perhaps not well. No, where I come from, you get ready to try a civil trial jury or bench trial, you prepare a joint pretrial statement, which makes clear to the court what issues will be raised, what proof will be offered, what evidence will be offered. Was something like that? Something like that was filed, I'm certain. But whether- What's my next question? And to answer your next question, I don't recall whether it raised- Said lack of cooperation. Talked about cooperation or addressed those claims and defenses with that level of specificity. Would you address the lost income claim, please? You haven't gotten to that. Okay. Yeah, running out of time. So the lost income claim, and counsel's right, there's a dearth of authority on lost income claims and the issues about them in general. And you see in our brief, we're relying on a lot of district court citations and out-of-state cases because there's just not a lot there to find. But there were several problems with the claim, but the biggest one and the one that has the most case law authority behind it is the problem of, Ms. McAlpine's disastrous finances and disastrous record keeping. Now, there was undisputed in several ways that there's just no record of how this business was doing before the fire or any way to project whether it was making money, losing money, except the inferences you could raise from the business's status with its creditors, which was not good. There was no bookkeeping being done, no state or federal taxes being paid where you can look at, hey, your return says you're making this much money. That's something we can base this business's income on. The only evidence that was presented to support a business income claim was that there were ongoing expenses after the fire, the primary one being the Harborstone mortgage interest. Now, the difficulty with that being the only evidence is we need to know what the business income was. Continuing expenses alone do not complete the equation. We need to know business income, net profit or loss, and continuing expenses under the policy language before we can even analyze what the continuing expenses are or what the claim could be. If we know only the continuing expenses, that would only happen to be the amount of the loss if the business would have been breaking even if there had been no fire. I mean, if the business was making money, it would be more than that. If the business was losing money, it would be less than that. But if there's no data at all, there can't be a claim because we can't complete the equation. All right. Thank you, Counsel. With regard to the business income claim, the reason that plaintiff did not put much evidence into this case to support that claim was the trial court dismissed it on the third day of trial. And so to say that that claim shouldn't have gone forward because we didn't support it is disingenuous. As to whether cooperation was in the answer or not, the excerpts of record at page 142, at that place you will find State Farm's answer. And you will see that he makes the statements about the terms and conditions of the policy. And then he says quite clearly that plaintiff's claim is barred by her misrepresentation and concealment. That's his affirmative defense on misrepresentation. There is nothing similar to that on his cooperation defense. It was never raised in any form and it was waived. Finally, Counsel made a statement that State Farm would have no incentive to pay Harborstone Mortgage if it couldn't get a release of the entire claim. I'm an insurance lawyer. It's all I've done my whole life. I find that offensive. State Farm has a duty and an incentive to handle cases in good faith. State Farm has a duty and an incentive to pay valid claims. And the Harborstone claim was a valid claim. There's no way you can even invalidate it. No. State Farm had incentive to pay those claims and should have. All right. Thank you very much, Counsel. Thank you both for your argument today. The matter will stand submitted. Court is adjourned. All rise.
judges: Selna, Hawkins, Nguyen